# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter James Marshall Biddle, Respondent.

Appellate Case No. 2015-000947

---

Opinion No. 27536
Submitted June 3, 2015 – Filed June 24, 2015

---

## DEFINITE SUSPENSION

---

Lesley M. Coggiola, Disciplinary Counsel, and Julie K. Martino, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Kevin Mitchell Barth, Esquire, of Barth, Ballenger & Lewis, LLP, of Florence, for Respondent.

---

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to the imposition of a definite suspension from one (1) to three (3) years or to disbarment.  In addition, respondent agrees to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct (the Commission) within thirty (30) days of the imposition of discipline and to complete the Legal Ethics and Practice Program Ethics School prior to reinstatement or readmission.  Further, upon reinstatement or readmission, respondent agrees to hire a law office management advisor upon the terms and conditions stated hereafter in this opinion.  We accept the Agreement and suspend respondent from the practice of law in this state for three (3) years with conditions as stated hereafter.  The facts, as set forth in the Agreement, are as follows.

## Facts

## Matter I

Respondent represented a client in a breach of contract action. On July 21, 2008, respondent filed a Summons and Complaint on his client's behalf. The defendant was served on August 1, 2008. On September 3, 2008, respondent sent a letter to the defendant stating his client would dismiss the lawsuit without prejudice upon receipt and verification of certain videotapes. A signature line was provided for the defendant; the defendant signed the letter and returned it to respondent.

Less than two months later, on November 10, 2008, instead of a dismissal, respondent filed a second Summons with an Amended Complaint on behalf of his client. The Amended Complaint added a claim of bad faith in connection with the alleged breach of contract. Respondent then filed an Affidavit of Default on September 9, 2009, and a damages hearing was held on December 8, 2009. Respondent obtained an Order of Default and Judgment against the defendant in the amount of $618,500. The defendant filed a Motion to Alter or Amend based on his belief that the case was to be dismissed; the motion has not yet been scheduled for a hearing; respondent has not responded to the motion.

Respondent did not respond to ODC's initial inquiry in this matter and did not timely respond to a reminder letter sent pursuant to *In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

## Matter II

Respondent represented a client in a post-conviction relief (PCR) action. The PCR application was denied by order dated February 23, 2011. The order shows a copy was sent to respondent on February 28, 2011. However, respondent requested a copy of the order from the Attorney General on April 28, 2011, indicating he had not previously received the order.

Respondent's client sent several letters to the Supreme Court of South Carolina inquiring about the status of his appeal. In response, the Court informed the client that no appeal had been filed. The client filed a *pro se* Notice of Appeal. The Court notified respondent of his client's filing and reminded respondent he was still counsel of record. The Court required respondent to provide it with a copy of the order on appeal, the date of receipt of the order, the Notice of Appeal, and proof of service on opposing counsel. Respondent failed to respond to the Supreme Court and his client's appeal was dismissed.

Respondent did not respond to ODC's initial inquiry in this matter and did not timely respond to a reminder letter sent pursuant to *In the Matter of Treacy*, *Id.*

## Matter III

Respondent represented another client in a PCR action. Respondent timely filed a Notice of Intent to Appeal for the client on November 1, 2011. However, respondent did not respond to several inquiries by the South Carolina Commission on Indigent Defense, the Division of Appellate Defense to determine whether he would continue to represent the client on appeal. Accordingly, the Supreme Court determined respondent was still counsel of record and informed him he would need to order the transcript. Respondent did not do so and, on March 28, 2012, Appellate Defense ordered the PCR transcript and took over the representation of the client.

Respondent did not respond to ODC's initial inquiry in this matter and did not timely respond to a reminder letter sent pursuant to *In the Matter of Treacy, Id.*

## Matter IV

Respondent was hired by a property management company. Clients and customers of the company were to submit claim information to respondent's office so respondent could assist the company with the decision of whether to file for bankruptcy protection. During the gathering of this information, the company decided it had no choice but to file for bankruptcy protection.

Claimant A was one of the bankruptcy claimants. He was told to send his information to an email address at respondent's office. When that email address did not work, he was given a second email address at respondent's office. Claimant A called respondent's office but could not get any information about the claims process. Claimant A did not receive any information from respondent.

Respondent admits that once the decision to file for bankruptcy protection was made, he had no communication with the claimants. The claimants were notified of the bankruptcy filing by the company's bankruptcy attorney, not respondent. Respondent did not notify any claimants that he was no longer involved in the matter.

Respondent did not respond to ODC's initial inquiry in this matter and did not timely respond to a reminder letter sent pursuant to *In the Matter of Treacy, Id*.

## Matter V

Respondent represented Client A, the Personal Representative of Client A's brother's estate. Client A was appointed on February 15, 2010. On February 15, 2011, a Request to Close was sent from the Horry County Probate Court to respondent based on the passage of twelve months since Client A's appointment. Respondent was advised that several documents needed to be filed to close the estate. The Probate Court requested respondent file these documents within twenty days. Respondent did not file the requested documents.

On April 18, 2011, respondent requested a sixty day extension to file the requested documents. The extension request was granted, making the new due date July 1, 2011.

On July 14, 2011, the Horry County Probate Court informed respondent that his extension had expired and included another Request to Close and a request for other information. Respondent sent blank forms to Client A to complete.

On July 22, 2011, Horry County Probate Court Judge A issued a Rule to Show Cause for a hearing on August 19, 2011, for respondent to show cause why he should not be held in contempt for failure to file the required documents to close the estate. On August 18, 2011, respondent filed documents in the Horry County Probate Court. The hearing on the Rule to Show Cause was cancelled.

On September 1, 2011, the Horry County Probate Court informed respondent that several amendments were required to be made to the documents before the estate could be closed. Respondent was given twenty days to make the amendments. On November 2, 2011, the Horry County Probate Court reminded respondent that the amended documents were still outstanding and requested the documents be filed within fourteen days.

On December 29, 2011, the Horry County Probate Court issued a third Request to Close and reminded respondent of the repeated requests for the amended documents. The court gave respondent an additional thirty days to file the documents.

On March 5, 2012, Horry County Probate Court Judge A issued a Citation for Accounting for Closing and set April 6, 2012, for respondent to provide the court with the outstanding documents. Horry County Probate Court Judge A then issued a Rule to Show Cause and set a hearing for May 14, 2012, for respondent to show

cause why he should not be held in contempt for failure to file the documents necessary to close the estate.

On May 15, 2012, a Summons to Show Cause was issued by Horry County Probate Court Judge A to respondent to appear on June 12, 2012, and show cause why he should not be held in contempt due to his failure to respond to court demands for documents. Horry County Probate Court Judge B presided over this hearing during which respondent testified and assured the court that all of the amended closing documents would be filed no later than June 30, 2012. The Rule to Show Cause was held in abeyance pending the submission of the amended documents.

On July 3, 2012, Horry County Probate Court Judge B issued an Order on Summons to Show Cause based on the hearing on June 20, 2012. Horry County Probate Court Judge B made several findings with regard to respondent's failure to respond to repeated requests by the court for respondent to file documents in order to close the estate. Horry County Probate Court Judge B found respondent to be in willful contempt of court for failure to timely respond and ordered him to pay a civil contempt fine in the amount of $500. On July 18, 2012, respondent filed the requested documents in the Horry County Probate Court and paid the $500 contempt fine.

Respondent did not respond to ODC's initial inquiry in this matter and did not timely respond to a reminder letter sent pursuant to *In the Matter of Treacy, Id.*

## Matter VI

In August 2012, Jane Doe contacted respondent for assistance with a probate matter. The matter was of some urgency as Jane Doe believed the personal representative of the estate in question was in breach of her fiduciary duties and Jane Doe wanted respondent to help her protect the assets of the estate.

During the initial telephone conference, respondent told Jane Doe he would go to the probate court and look into the matter. He later told Jane Doe a petition to remove the personal representative would need to be filed and he led her to believe he had filed a petition in probate court when he did not do so.

Jane Doe emailed and telephoned respondent multiple times over the course of six months inquiring about the status of the petition and to find out whether a hearing

had been scheduled.  Respondent routinely ignored her inquiries, but did respond on two noteworthy occasions.  Once, in November 2012, Jane Doe asked respondent whether she needed to retain a new lawyer because she was frustrated with respondent's failure to return her calls or respond to her emails.  She wanted copies of the documents that had been filed and asked why no hearing had been scheduled.  Respondent replied via email, "Jane:  Not necessary.  Will email documents," convincing her that he had in fact filed the petition.

On another occasion, in response to repeated requests for information from Jane Doe, respondent informed her that he was very busy and, while he was trying to help her, clients who had paid his standard retainer fee needed his assistance.  Although Jane Doe had not executed a fee agreement with respondent and never paid him any money, she offered to send him money on more than one occasion.

Finally, after many more attempts to contact respondent, Jane Doe emailed respondent on Saturday, February 16, 2013, and again complained about his lack of communication.  She gave respondent an ultimatum, stating that if she did not hear from respondent by Monday at 5:00 p.m., she would find other representation.  Jane Doe sent this email with a request to notify her when it was read.  She received confirmation that the email was read on Saturday.

On Monday evening, respondent sent a text message to Jane Doe and told her that her email from Saturday had gone into his "junk folder" and that he had just read it that day.  Based on Jane Doe's confirmation receipt, this was untrue.  Respondent sent another text message to Jane Doe telling her that the hearing date was set, but he could not remember the date and he would let her know on Tuesday.

Respondent never filed the petition and, therefore, no hearing date was scheduled.  Respondent's representations to Jane Doe that he had filed the petition and that a hearing had been set were untrue.

Jane Doe's emails demonstrate she believed respondent was representing her and his limited responses show that this perception was justified.  In contrast to this perception, respondent reported to ODC that he did not represent Jane Doe.  He stated he had reviewed the documents on his own time and at his own expense.

Jane Doe eventually hired another lawyer who discovered respondent had not filed anything in probate court.  The new attorney filed the petition on March 1, 2013, requesting the removal of the personal representative based on a breach of

fiduciary duty.  This petition was filed approximately eighteen months after Jane Doe initially contacted respondent.

## Matter VII

Complainant A was sued by a company for a debt allegedly owed to the company. Complainant A sent a letter to the company's attorney denying liability and mistakenly thought the letter would suffice as an Answer.  He contended he did not owe the money because someone forged his signature as guarantor for the debt. The amount of the debt at the time the company filed the Complaint was $5,588.43, not including the accruing interest.  The company's attorney filed a Motion for Default, and judgment was entered against Complainant A on January 11, 2011.

Complainant A met with respondent on February 1, 2011, for the purpose of retaining respondent to file a Motion to Set Aside the Default Judgment based on fraud.  Complainant A paid respondent $500 at the initial meeting.

On February 4, 2011, respondent sent a retainer letter to Complainant A.  In the letter, respondent explained that the representation would cover the Motion to Set Aside and the fee would be $1,500.  Respondent acknowledged the prior receipt of $500.  The letter also stated respondent would accept a payment arrangement but that "[w]e must receive at least half of this retainer fee prior to work being done on the case."  The engagement letter contained a signature line for Complainant A consenting to respondent's representation based on terms of the letter. Complainant A did not return the letter to respondent.  Respondent did not refund the $500 or any portion of it to Complainant A, did not contact Complainant A about the case, or do any work on the case to earn the $500.

In 2013, Complainant A requested respondent assist him with the refinance of a mortgage.  As part of the title check, respondent found the prior judgment and discussed it with Complainant A.  Complainant A told respondent he thought respondent had taken care of the judgment pursuant to their agreement. Respondent told Complainant A he had not done any work on the matter because Complainant A had not paid the fee.

In August of 2013, respondent filed a Motion to Set Aside Default Judgment.  A hearing on the motion was held on September 10, 2013, at which time the judge denied the motion based on the expiration of the one year statute of limitations.

On September 26, 2013, respondent received a letter from another attorney indicating Complainant A had hired him to take over the matter and requesting Complainant A's file from respondent. A release signed by Complainant A was included in the letter.

On September 30, 2013, Complainant A provided the Magistrate's Order denying the Motion to Set Aside Default Judgment to respondent via email. Respondent replied and informed Complainant A that he had heard from Complainant A's new attorney and had ten days in which to file an appeal of the judge's ruling. Respondent also indicated that Complainant A still owed him money for the refinance matter and the default judgment matter. Respondent indicated "[u]pon payment I will provide your files to [new attorney]."

Respondent admits he should have informed Complainant A at the initial meeting that Complainant A had one year to file the Motion to Set Aside Default Judgment and that he should have contacted Complainant A within the one year period. He further admits he should have returned Complainant A's $500, requested the outstanding fee within the statute of limitations period, or have communicated with Complainant A before the statute of limitations expired.

## Matter VIII

John Doe and other members of a Planned Development (PD) met with respondent in the summer of 2010 and discussed suing the developer for a variety of issues involving the lack of neighborhood amenities and problems with the Home Owners' Association (HOA). Respondent quoted a fee of $5,000 to file suit.

Several months later, on February 1, 2011, John Doe paid respondent $2,500 to get started on the lawsuit. No fee agreement was executed and no other homeowners paid any money to respondent.

In 2011, the developer was foreclosed upon and the issues related to the HOA and the amenities became moot. Respondent did no further work on the matter. He did not send a bill to John Doe or other homeowners and, although he alleged he did a "good bit" of work on the matter, he did not keep time records to verify this claim.

In December 2012, John Doe, based on his belief that respondent still represented him, contacted respondent about suing the City of Conway. John Doe alleged the city illegally issued certificates of occupancy to the residents of the PD and issued building permits for a new builder to build homes in the PD. John Doe's

complaint, in part, was that the new builder was intending to build smaller homes in contravention of the PD's original plan. John Doe and respondent communicated for several months about the issues and, on April 22, 2013, respondent sent a text to John Doe stating: "John: I'm ready to take on the city of Conway!"

In May 2013, the City of Conway filed a Complaint and Motion for a Restraining Order against John Doe. The basis for the motion was that John Doe had behaved aggressively and threateningly toward City officials. John Doe notified respondent of the Complaint and respondent appeared at the hearing on John Doe's behalf. There was no fee agreement addressing this representation, but respondent represented John Doe at the hearing. He cross-examined witnesses, presented arguments to the judge, and advocated on John Doe's behalf.

Over the next several months, John Doe sent emails and text messages to respondent about several issues relating to the new homes, the PD, and the conduct of certain city employees. Respondent frequently responded with messages indicating that he was gathering evidence or working on the matters in some fashion. John Doe's messages to respondent became more and more strident and vitriolic toward the city, toward several people involved in the matter, and toward respondent. The communications between John Doe and respondent became hostile and, in November, John Doe filed a complaint against respondent with the ODC.

In response to the Notice of Investigation, respondent indicated that he never intended to sue the City and that he told John Doe to hire an out-of-town attorney. This is contradicted by respondent's text message. Respondent indicated that he did not believe John Doe had an actionable claim against the City until October 2013 when John Doe's request for a fencing permit was denied. Respondent admits he did not inform John Doe of this opinion.

## Law

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation to client); Rule 1.2 (lawyer shall abide by client's decisions concerning objective of representation); Rule 1.3 (lawyer shall act with reasonable diligence and promptness is representing client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter and promptly comply with reasonable requests for information); Rule 1.5 (scope of representation and basis or

rate of fee and expenses for which client will be responsible shall be communicated to client, preferably in writing, before or within reasonable time after commencing representation); Rule 1.16 (upon termination of representation, lawyer shall take steps to extent reasonably practicable to protect client's interests, such as giving reasonable notice to client); Rule 3.2 (lawyer shall make reasonable efforts to expedite litigation consistent with interests of client); Rule 3.3 (lawyer shall not make false statement of fact to tribunal); Rule 3.4 (lawyer shall not conceal document or other material having potential evidentiary value; lawyer shall not knowingly disobey obligation under rules of tribunal); Rule 3.5(d) (lawyer shall not engage in conduct tending to disrupt tribunal); Rule 8.1 (lawyer shall not knowingly fail to respond to lawful demand for information from disciplinary authority); Rule 8.4(a) (it is professional misconduct for lawyer to violate Rules of Professional Conduct); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice).

Respondent also admits he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct); and Rule 7(a)(3) (it shall be ground for discipline for lawyer to willfully fail to respond to lawful demand from disciplinary authority to include request for response).

## **Conclusion**

We accept the Agreement and definitely suspend respondent from the practice of law in this state for three (3) years.[1] Respondent shall pay the costs incurred in the investigation and prosecution of this matter within thirty (30) days of the date of this opinion. He shall complete the Legal Ethics and Practice Program Ethics School prior to filing a Petition for Reinstatement.

---

[1] Respondent's disciplinary history includes a public reprimand issued in 2009, *In the Matter of Biddle*, 382 S.C. 233, 676 S.E.2d 319 (2009), and a letter of caution issued in 2011 warning respondent to adhere to some of the Rules of Professional Conduct cited in the current matter. *See* Rule 2(r), RLDE (fact that a letter of caution has been issued shall not be considered in subsequent disciplinary proceeding against lawyer unless caution relevant to misconduct alleged in proceeding).

In the event respondent is reinstated to the practice of law, he shall hire a law office management advisor approved by the Commission and complete the following: 1) within thirty days of retaining the advisor, respondent shall meet with the advisor to conduct a thorough review of his law office management practices; 2) within thirty days of the date of the review, the advisor shall file a report concerning respondent's law office management practices with the Commission; the report shall include a review, analysis, and recommendations concerning respondent's practice; 3) respondent shall meet with the advisor once every three months for two years and the advisor shall file a complete report with the Commission within thirty days of each meeting; and 4) respondent shall be responsible for payment of the advisor and for timely submission of the advisor's reports. Respondent's failure to comply with any of these conditions or with the advisor's recommendations shall constitute grounds for further discipline.

Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

**TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur. HEARN, J., not participating.**